322-0175-WC City of Joliet Appellant by Nicole Wiese v. The Illinois Workers' Compensation Comm'n Kimberly Smythe, Appellee by Matthew Coleman. You may proceed, Ms. Wiese. Thank you. Good morning, Your Honors. Counsel may please the court. My name is Nicole Wiese and I represent the appellant in this matter, the City of Joliet. The City brings this appeal before you based on the previous circuit court order which affirmed the Commission that awarded certain benefits to the claimant in this matter, Ms. Kimberly Smythe, but also denied certain credits which were sought by the City. This case initially stemmed from two separate work incidents sustained by Ms. Smythe to her shoulder and knee. Initially, the City had causation disputes with each claim. These were brought up through the Commission level and once the Commission affirmed causation and the awards for the periods of temporary total and the medical bills, at that time we ended the appeal. Therefore, as I said, what we have before you today is solely a question of what monies or credits should be afforded to the City which were paid out to Ms. Smythe throughout the credit argument. The first are for certain sections where TTD was awarded but monies were paid to Ms. Smythe and TTD credit was not afforded to the City. The second aspect of our argument is for certain periods where Ms. Smythe received monies over and above what the Act allows for, the two-thirds for TTD benefits, and the City was also denied credit for those benefits. In this matter, there's four different sections that have been laid out in the brief and I would like to go through each of those sections to set forth the City's arguments. The first section involves the initial six months of Ms. Smythe's claim when the City was paying TTD benefits. At the same time, Ms. Smythe was receiving what we referred to as make whole benefits in light of the pending collective bargaining agreement requiring that the City provide an additional one-third of the TTD benefits and her salary. Like I said, during this time, temporary total disabilities were paid, they were not in dispute, and the lower courts did provide credit to the City for making those payments. Now, what is at issue for this period is the make whole payment or the additional one-third that the City paid to Ms. Smythe throughout this six-month period. Now, initially, these benefits were awarded by the arbitrator. The Commission and Circuit Court vacated the award of those credits, relying on the fact that saying that the City failed to show that the salary payments paid for that period were limited to employment related disabilities. Also, they focused their analysis on whether the make whole benefits were in response. The City argues that that is not correct, and that should be reversed. There was clear language in the CBA that was governing at the time, which said specifically, in order for those additional benefits to be received by Ms. Smythe, she had to have sustained an on-the-job injury, illness, or disability. Clearly stated, that was the only reason that the make whole benefits were triggered, and that was only because Ms. Smythe sustained a work injury. Therefore, based on that analysis, the Commission and Circuit Court were erroneous in vacating the award of those credits for the make whole benefits for that initial six-month period. The second period of time, which is from July 15- So, Council, if you could illuminate the Commission's decision for reversing the arbitrator and denying the credit there. The Commission found that since respondent had received full credit for the TTT payments it made during the period, it was not entitled any further credit for the period, explaining, respondent already received a credit for the TTT paid at $58,188.50, the extent of the compensation that would have been payable during the period covered by such payment. Is that the Commission's reasoning? Well, Your Honor, the Commission did then go on to provide further discussion of why the City didn't prove that the make whole benefits were paid solely because of the work injury. There's another couple lines there in the second part of the paragraph where they then say that they discuss about certain evidence provided by testimony, where they then state that we couldn't even verify the period for the make whole benefit and therefore did not prove our entitlement to the credit. So, in response to that is where I read it that the Commission and the Circuit Court have rested their analysis on the fact that since we didn't prove the make whole benefit was only provided because of a work injury, that we shouldn't be entitled to it. And so the basis then of our argument is that that's not correct, that the facts and evidence clearly show the only reason that the make whole benefit was provided to Ms. Mike was because she sustained a work injury. Well, if the respondent could take them back later in lieu of paying the benefits, how does that logically and legally make those payments? How's the claimant made whole if respondent can take back the credits? Well, for those credits, Your Honor, we would be seeking credits against the overall award. So, the credit was given for the initial TTD payment against the TTD period, but for those initial benefits, that was something afforded to Ms. Smyth, in addition to, those are in addition to what she would get under the act, right? So, that, I would say is seen as sort of an extra benefit while she's off work to use. So, therefore, and what the case law, the cases that address the, you know, when credits can be, could and should be applied would show that this wouldn't be to take anything away from Ms. Smyth per se, but you credit it against the full award of the case, you know, of the decision by the commission. Okay. Okay. So, the second section, this is from July 15 to 2016. Now, what occurred during this period is Ms. Smyth continued to receive temporary credit. Can I ask you, can I ask you a question? Of course, Your Honor. So, you don't dispute that you received a credit for all the TTD that was paid? That, no, that, that's, there's, for the initial two periods through January of 2016, benefits that were specifically designated as TTD were accredited, correct? Okay. So, now you're seeking credit for additional sums that you paid over and above that TTD, is that correct? Correct. Well, where would the commission ever get the authority to award you a credit against compensation due under the Workers' Compensation Act for some other amount of money you paid over and above that which you were required to pay under the act? Well, Your Honor, that's where the cases come in. The Salisbury case, world color, world color press, where when benefits have been paid over and above what should be received by the individual. But you didn't pay, you didn't pay additional TTD over and above. You paid a contractual obligation under a collective bargaining agreement. You didn't pay any additional sums over TTD based on her entitlement to benefits under the act. You're asking for a credit for something that you paid that didn't amount to compensation within the meaning of the Workers' Compensation Act. Where would the commission ever get the based on the the analysis that the payments it's I mean it says specifically excuse me the the basis you know that we know from TPAC and from the Elgin case that that the employer is entitled to a credit where it can be shown that the payment for which credit is sought is available exclusively for occupational related diseases. So the only reason that Ms. Smythe was entitled to receive this additional payment was because she sustained an occupational disease. So we understand that. The only reason she was entitled to it under the collective bargaining agreement was because she had suffered an occupational injury. But the payment of that additional money was not the payment of compensation under the Workers' Compensation Act. And so it was payment that you were obligated to pay pursuant to a collective bargaining agreement. You're only entitled to credits for amounts you pay that you were required to pay under the act. And as you as you'll see Judge and as I as I proceed the facts then change where this argument kind of varies a little and becomes I think a little bit clearer in some of the other aspects of some of our other facts. As we go into the the second period of time from July 2015 to January 2016 during that point the collective bargaining agreement no longer applied. The six-month period for it had expired and Ms. Smythe was now still receiving TTD. And again we have no issue with the credit that she received for that TTD period which is what she would be allowed under the act. Now during that time what happened was that when you look at the facts and the evidence she continued to receive her payments exactly the same way she had for the prior six bargaining agreements. She could have elected specifically to continue to receive those payments correct? She could have your honor. And here's where I'm saying that I believe the commission and the circuit court were against the manifest weight of the evidence because they're finding that she put that collective bargaining agreement into effect or went ahead and used her accrued benefits. Like I said it was against the manifest weight of the evidence. I don't believe and we argue that that's the case. There if you look at the 80 some pages of payment records that we submitted I think it very clearly delineates when she worked regular time. She had hours that came out. She had certain benefits that came out. When she went on TTD it showed the TTD. You know these documents very clearly designated and laid out how she was being paid. For this second period of time basically what happened is how she'd been paid for the first six months didn't change. It just didn't get shut off that she needed to have just gone back to getting TTD. Now you're right your honor if she wanted to have the accrued benefits start coming out and covering her additional missing wages she had that right. But it's our position that no facts prove or showed that that was the case. We had testimony we had documentary evidence that those pay stubs were correct and when it showed that she wasn't using accrued benefits that in fact that was the case. And so really what this section what occurred sort of during this period of time is that like I said the the exact way she was being paid before by the city just kept going. It wasn't turned off because she didn't ever apply for or request that the accrued benefits be used. So this is where the cases I mentioned excuse me earlier Salisbury World Color Press and the cases where the general purposes of the act would would come into play where when we've overpaid for a reason for you know an inexplicable reason or in error that these benefits should be applied to a credit over again not just TTD but in this case over the overall general award which was submitted through the commission. But isn't there another mechanism going in here? Isn't it also true that the CBA there could be a continuation of make all benefits beyond the initial six months if it's based on an expenditure of accrued leave? Right but again your honor the if you the CBA says that has to be that the employee may choose that they may request for that to happen and again in this case that that did not happen. Ms. Smyth didn't request for to start using her accrued benefits. The evidence that was provided that that was the case there was there was hearsay evidence that shouldn't have been relied upon by the commission or the circuit court because it was it was sustained. But didn't the commission implicitly overrule the arbitrator? Didn't the commission find that it was not hearsay? No your honor and that was not also not brought up on appeal. The uh the evidence was sustained and that was not brought up after that so to rely on that again would be an error. The evidence just wasn't I think the evidence uh more favored and weighed in that this was merely done in error that there was no request by Ms. Smyth to receive the accrued benefits as her supplemental income and therefore this was additional money paid to her in error and should be credited back. The next period that we go to again this is a kind of an interesting situation but at this point Ms. Smyth started receiving full salary. She was not at work she was not getting TTD and she was getting her full salary none of those things are disputed. Now what took place um during this time again the pay subs I for some reason again inexplicably she's now receiving full wages. We do not dispute that the TTD was awarded for this period but instead we would seek the TTD that we would receive a credit. No credits were given for this period because again the commission circuit court found that Ms. Smyth was using her accrued benefits for these wages when again the facts just simply don't support that. She never requested it there was nothing in payroll there was no writing there was no documentation to support that these accrued benefits were being used and you'll even see that during the next period our last period the accrued benefits were then being used. So I understand that the commission uh made their findings but again I think their findings were against the manifest weight based on the evidence presented and that again there was I can't I wish I could give you a concrete answer as to why the full salary was being paid but none of her accrued was awarded TTD but then there was no credit given to the city for the TTD so therefore we would seek that we'd be afforded at least the TTD credit for the period of TTD awarded for that period. Um can I ask you I'm I'm getting confused by this argument uh 8J2 seems to cover the where it says that nothing contained shall be construed to give you or carry your right to credit for any benefits or payments received by employment other than compensation payable pursuant to the act and the amount extra that was being paid under the collective bargaining agreement was not compensation pursuant to the act and then goes on to say and where they receive other compensation whether it's full partial salary etc and so on you were entitled to a credit for each such payment only to the extent of the compensation that would have been payable during that period covered by the payment and I presume that's other than uh compensation under the act that would have been payable during that payment so if the amounts payable over and above TTD were not payable uh pursuant to the act where do you get the right to a credit under 8J? Well it would to be uh it's pursuant to the to the case like judge the the um color press addresses it Salisbury court addresses it Mesamori and it's pursuant to the fact that these payments were made in error the the overpayment the payment of a salary when she wasn't working and should only have been getting TTD once we got that issue worked out that was made in error there was no it's it's it she should not have been receiving that money at all that's more than what she would get if she was let's say we weren't in any dispute and she was getting paid benefits she'd only get paid the TTD she shouldn't have been getting a full salary we had no agreement on file to that extent and the CBA wasn't in control then so really it falls under the category of an overpayment an erroneous payment and that you know there shouldn't be a windfall to Ms. Smyth for receiving over and above what she should have received under the act. Is that the case for all three periods that you're claiming your credit for? No that is that is the argument for the the middle two periods from July 2015 through August 2016 when she was receiving over and above the TTD amount in error. So so what what about what about the period that she was receiving these payments uh when it wasn't in error? You still claim you're entitled to credit? So where the where the TTD payments were credited we don't but for the last two periods where she received full salary no credit was given whatsoever for the TTD period so at a minimum we should have received a credit for the TTD period when she was paid. Now again it's dependent on the commission categorization but I also would argue under Elgin their categorization of her being paid by accrued benefits or not almost wouldn't matter because under Elgin when accrued benefits were used in lieu of TTD this court awarded you know the credit for the TTD period so um for the for the last two sections from January 2016 through December of 2017 the commission gave zero credit whatsoever and I would argue at a minimum at least the TTD period for which she received at first her full salary and then used accrued benefits it seems to me that that both periods should at least warrant the credit for TTD the TTD period. Counsel why isn't the plain language of section HA1 itself controlling? You're trying to bring in these cases by analogy but why isn't the statute controlling that Justice Hoffman has read several times? Sure I well your honor I believe that it's controlling but in connection with having to look at it with how it's been interpreted by the cases that have that have come since. Is there some case that purport to overrule it? Um not to overrule but but the cases that I referenced in my brief and have mentioned here um I think are relevant uh for an instance like this I mean I will say I don't I haven't had this scenario often where there's been such um sort of over payments and changes in the way payments were made and you know such different factual scenarios for throughout the the life of a case but I think you have to look at both the um the statute and in connection with with the case law how to handle and to address the credit so that there isn't a windfall um solely to to the petitioner. And just to conclude the burden of proving entitlement to credits does fall on you correct? Correct your honor. The claimant doesn't have to prove that it's not entitled to the claim? Correct. Okay all right thank you. Yes thank you. Okay thank you Ms. Wiza uh Mr. Coleman you may respond. Thank you. May it please the court, justices, counsel my name is Matthew Coleman and I represent the injured worker in this matter Ms. Kimberly Smythe. A burden is a burden it's a heavy workload and this is important because injured claimants and their attorneys are intimately familiar with with having a burden and know that all their I's must be dotted and T's crossed otherwise benefits will be denied. That's why we're here today quite simply with the city's burden to prove that it was entitled to a credit and it failed to do so and I think the justices are justices are starting to see that the city doesn't know what the city doesn't know in this case. Now I will address counsel's arguments regarding overpayment, World Color Press, Salisbury, TPAC, Village of Elgin, but before I do that I want to refer to the to the testimony of the city's claims administrator Armando Diavila in his testimony C at the record 337 through 338 and this is regarding payment made by the city on February 26, 2016 and I asked him question how much was paid by the city of Joliet? Answer, how much was paid? According to this she was paid $3,729.36. Question, why? Answer, why was she paid that amount? Question, she wasn't working and it's not TTD. Why did you pay that amount or why did your predecessor pay that amount? Answer, you would need to ask her. Now I didn't say this then but I'll say it now. I don't got to ask her anything. You got to do it, right? So you know that's essentially with respect with the analysis in this case should end. Just as if during the deposition of Dr. Burra I had asked him Dr. Burra is it your opinion to a reasonable degree of certainty in the field of orthopedic surgery whether the symptoms for which you're recommending an ortho arthroscopic surgery are related to the wreck and he said I don't know you'll have to ask your other doctor. The same you know if that were the case if he answered that way I wouldn't be here right now on a causation issue regarding the right shoulder. First, I'd bang my head against the wall. Second, I would ask Dr. Burra the same question 25 more times until I try to get a different answer but if all the answers were the same you got to ask somebody else. I'd pick up the emotionally because we're not going to meet our burden on the right shoulder causation claim. That's what I would do and that's where we're at with the city today. When Armando Diavila says I don't know what these payments represent the city does not meet its burden. Now I'll turn my attention to the city's claim of an overpayment with regard to World Color Press in Salisbury. The law is clear the extent of the liability is two-thirds of the average weekly wage for temporary total disability benefits. What happened in World Color Press? Well in that case the average weekly wage was adjusted by the commission. In fact it was reduced thereby reducing the extent of the liability or that two-thirds figure. That's why there's an overpayment in that case and it's funny I'm 40 and I laugh and I talk with my contemporaries and say man how would you like to practice in the 80s when the commission says yeah there's an overpayment but don't worry about it right water under the bridge. That's what happened in World Color Press until it was taken up on appeal. Same is true for Salisbury. They miscalculated the death benefit and after putting on a hearing and the death benefit was calculated that's when the credit was applied. Now the city is claiming and it's hard to reconcile that the first make whole benefit they're entitled to a credit for because it's related to occupational injuries but the second period of make whole benefits that's a mistake and we're entitled to a credit for that too under World Color Press. Doesn't make sense right and at the time of arbitration they were claiming both periods as make whole solely related to there is a collective bargaining agreement supported by the testimony of the city's own claims administrator that a make whole benefit just like Justice Hudson hit the nail on the head is separate and above because it acknowledges that two-thirds the TTD benefit does not make the injured employee whole. That's why there is an additional mechanism to make them whole. In terms of the the third period of time for what the city is now claiming to be salary or was claiming a salary at the time of the hearing and is claiming a credit manifest way to the issue manifest way to the evidence is the appropriate standard of review and when Mr. D'Avila testified that he believed she was working at the time despite the fact that the claimant herself her supervisor and the documents put into evidence show that she was not working at that time. So why was she being paid? Mr. D'Avila did not know. The attorney for the IMRF was called to testify too and in order for the claimant to be able to draw her hardship agreement she had to deplete her accrued collective bargain benefits sick vacation and comp time. So the commission through a permissible inference that those benefits had to have been depleted in order for Ms. Smythe to enter into such a hardship agreement and that inference should not be overturned unless it's against the manifest way to the evidence and it's clear not just by the testimony of D'Avila or the glitches on the ADP payment records that the city doesn't know what any payment represents and it's claims for credits for make whole for it and it did claim credits for sick vacation and comp time and it's really important to point out that it claimed a credit for the IMRF hardship agreement payment up until the administrative review. It claimed a credit for every dollar Ms. Smythe received up to the time of the hearing. So as far as the make whole benefits are concerned, legally the city is never entitled to more than two to a credit greater than two-thirds of the average weekly wage. When it the city's calling salary, the commission came to the conclusion that they depleted her accrued benefits. That is a factual determination that should not be disturbed unless it gets manifest way to the evidence. For those reasons, justices, I respectfully request that the decision of the uh confirming the decision of the commission be affirmed in all respects. Unless you have any questions, thank you for your time. Any questions for the court? I believe so. No? Okay. Thank you, Mr. Coleman. Uh Ms. Ruizza, you may reply. Thank you. Uh to touch first on council's discussion of of the city meeting the burden and as your honor justice Hudson mentioned, yes, we understand and agree that it is our burden to prove here. Um council mentioned one aspect of of the testimony of our HR uh supervisor from the time and in response I would argue it is a manifest weight standard and and the manifest weight uh we provided pay pay subs, pay documentation that there was no objection to those being submitted into evidence. No one questioned that those were erroneous. That was never brought up and they they very specifically if you look at the course depicted how she was paid and where those benefits were paid from and it shows that no accrued benefits were taken out or used except for when she was working full duty before she was taken off work and then let me ask let me ask you a question. Do you agree with the proposition that you are not entitled to a credit for any benefits that you paid over and above the TTD that was owed to this petition? What I what I how would qualify that judge? It would be a yes or a no by the way. You agree with that proposition that under no circumstances would you ever be entitled to a credit over and above the TTD benefits that you were owed to this injured worker receives greater than what they're allotted under the act which would be the TTD amount that there are instances where we would be credited back where that is done. Sure sure when you pay TTD by mistake. Well and and that's what I'm saying judge has occurred here and I know counsel mentioned you know when in his discussion of the overpayment and comparing the facts of World Color Press and of Salisbury. I wanted to. Why was the TTD paid by mistake in this case? It was it was that was exactly it your honor. I mean it was it was a mistake it was it was paid without truthfully for what I think happened for the first section and it shows she was continued to be paid as she was for that six month period because it wasn't it wasn't turned off it wasn't stopped and she didn't go back down to just the May call payment was turned off right correct and she was was she still entitled was she still entitled to TTD for that period she was entitled to the TTD but she wasn't entitled to receive more than the TTD which she did. That has nothing to do that you didn't pay TTD by mistake you paid the May call payment by mistake. Well she was above and beyond her TTD amount by mistake. Well yeah but but what it wasn't it was it was the payment of a May call payment that you made by mistake under the collective bargaining agreement you didn't pay TTD by mistake. Right correct judge but I guess what I what I I'm looking at when the court and world press look to some other jurisdictions right and the court states that by denying the right to recoup any excess payment does any excess payment if later discovered could frustrate a primary purpose of the act. So the the court does address it says any excess payment and I would consider this and and that's that's why I addressed these that from for multiple periods there was an excess payment and I understand I yes we were not paying extra. Do you contend that there's any period for which you did not receive a credit for the actual TTD portion of the payment that you made? Yes judge yes and that what period is that and that that is the last two periods and that's where she was receiving full salary and then subsequently was being paid out of her accrued benefits for those two periods no credit was given for the TTD period. So the court and she was she was entitled to TTD period for the correct yes okay yep all right all right I understand thank you yes thank you I know there's a lot there thank you very much for your time. Any further questions? Okay okay yeah I do have one final question counsel your opponent how do you respond to your opponents pointing out that Mr. Davila didn't seem to be able to articulate why these payments were made? And my response judge is that he he didn't know why because they were they were done in error they shouldn't have been made I mean that's that's sort of what kind of got them got us into this problem in the first place is that they shouldn't they shouldn't have been made those payments should not have continued after the six months ended for the make whole then a new you know something else should have started that she should have gone back to just getting TTD they had been no agreement for for her accrued benefits to come out at that point but they did they kept coming which is why I you know our position is that was done in error and she received more than she should have and more than she would have been awarded under the act and the fact that nobody knows why they were made means you have sustained your burden of improving an entitlement to a credit when nobody knows why they got paid. Well but they had but they were paid I mean the evidence shows that they were paid and that she still received those money she testified she she took that she cashed the checks and and received the money. Okay thank you. Thank you. Okay thank you counsel both for your arguments in this matter this morning it will be taken under advisement and a written disposition will be forthcoming.